UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CAMARREO LAROME HODGES,

            Plaintiff,

v.                                                            Case No. 20-cv-18-pp

KENOSHA COUNTY JAIL, *et al.*,

            Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NO. 2), GRANTING PLAINTIFF'S MOTION TO WAIVE INITIAL PARTIAL FILING FEE (DKT. NO. 10) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Camarreo Larome Hodges, an inmate at the Racine Correctional Institution who is representing himself,[1] sues under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. Dkt. No. 1. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. no. 2, and to waive the initial partial filing fee, dkt. no. 10, and screens his complaint, dkt. no. 1.

**I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with

---

[1] The plaintiff was at Dodge Correctional Institution when he filed his complaint. The Wisconsin Department of Corrections Inmate Locator website indicates that the plaintiff was transferred to Racine Correctional Institution on February 6, 2020. https://appsdoc.wi.gov/lop/detail.do.

1

his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On January 28, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $7.47. Dkt. No. 9. On February 5, 2020, the plaintiff moved to waive that fee. Dkt. No. 10. The plaintiff stated that he was homeless, had no job and had no family to support him while he is incarcerated. Id. He stated that the money he briefly had in his account was from his grandmother, but that he had to use that for personal hygiene items. Id.

The court has the authority to waive a plaintiff's initial partial filing fee under 28 U.S.C. §1915(b)(4) if he lacks both the "assets" and the "means" to pay it. The Seventh Circuit has explained that "[i]t is not enough that the prisoner lack assets on the date he files." Newlin v. Helman, 123 F.3d 429, 435 (7th Cir. 1997), overruled in part on other grounds by Walker v. O'Brien, 216 F.3d 626, 628–29 (7th Cir. 2000), and Lee v. Clinton, 209 F.3d 1025, 1027 (7th Cir. 2000). If that were the case, prisoners could easily avoid paying the initial partial filing fee by spending what is in his trust account before filing his lawsuit. Therefore, the court must construe a prisoner's "means" broadly. A prisoner may lack "assets" but still have "means" to pay the fee.

According to his trust account statement, the plaintiff had $87.85 in his account as of August 9, 2019 but had spent all of it by October 16, 2019. Dkt. No. 3. The statement shows that he spent the money on medical copays,

2

postage, one unspecified "Order Debit" (which could be the personal hygiene items mentioned in his letter to the court) and a forty-dollar "3rd Party Release." Id. Between October 21 and December 11, 2019 the plaintiff incurred $62.79 in debt for postage, medical copays and "indigent kits." He last received a credit into his account on August 17, 2019, it does not appear he has received any deposits and his balance has remained zero. Id.

Given that the plaintiff has neither the assets nor the means to pay the initial partial filing fee, the court will not require him to pay one. The court will grant the plaintiff's motion to waive the initial partial filing fee and his motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d

714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff has sued the Kenosha County Jail and Kenosha County Pre-Trial Facility and five correctional officers at Kenosha County Jail: Officers Megan, Martini, Gloria, Potter and Mike. Dkt. No. 1 at 2.

4

The plaintiff alleges that on August 30, 2019, the five officers "put [him] in the crazy chair for no aprox [sic] reason" from 11:00 p.m. until 8:00 a.m. the next morning. Dkt. No. 1 at 2. He also appears to allege that he was put into segregation X-Block 4 "into x-20-R Room" on August 31, 2019 from 10:45 p.m. Id. The plaintiff alleges that Officers Martini, Megan and Potter had sex and that the plaintiff told Megan and Potter that "Martini gave them herpes." Id. The plaintiff says that those officers were mad at him, "all because someone flood they cell in i refuse to tell them who did it because that's they job not minds." Id. The plaintiff asserts that Megan said she was going to leave the water in his cell; he says that he told Megan that if he went to sleep and woke up, forgetting there was water on his cell floor, he could slip and fall and "then it would be on her," so Officer Gloria told him that that she thought that he was "temp to suicide [him]self," when he did not "say that at all." Id. at 3. Finally, the plaintiff alleges that while he was in the crazy chair, Megan and Potter refused to provide him water or allow him to use the bathroom. Id.

The plaintiff says that none of the five officers should work for the jail "based upon the decision they didn't do they job accordingly." Id. at 4. He asks for the officers to lose their "privileges job." Id. He asks for $75,000 for being denied water and restroom access while he was in the crazy chair. Id.

C.  Analysis

The plaintiff names Kenosha County Jail and Kenosha County Pre-trial Facility as defendants. Neither of those entities is a "person" subject to suit

5

under §1983. See Andreola v. Wisconsin, 211 F. App'x 495, 497 (7th Cir. 2006) (citing Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989)).

To the extent the plaintiff seeks to sue Kenosha County itself, he has not stated a claim. A local government such as a municipality or a county "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under §1983 on a *respondeat superior* theory." Monell v. Dep't. of Soc. Serv., 436 U.S. 658, 691 (1978) (emphasis in original). A municipality may "be held liable under §1983 only for its own violations of federal law." Los Angeles Cty., Cal. v. Humphries, 562 U.S. 29, 36 (2010) (citing Monell, 436 U.S. at 694). To demonstrate municipal liability, a plaintiff "must demonstrate that there was an 'official policy, widespread custom, or action by an official with policy-making authority [that] was the "moving force" behind his constitutional injury.'" Estate of Perry v. Wenzel, 872 F.3d 439, 461 (7th Cir. 2017) (quoting Daniel v. Cook Cty., 833 F.3d 728, 734 (7th Cir. 2016)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 138 (1988) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479–80 (1986) (emphasis in original)).

The plaintiff has not alleged that the officers acted because of an unconstitutional Kenosha County policy or custom. He alleges only that they acted on their own to punish him for his behavior. His claims are against the

6

officers and not against Kenosha County, and the court will dismiss the Kenosha County Jail and the Pretrial Detention Facilities as defendants.

The plaintiff does not say whether he was a pretrial detainee or a convicted prisoner at the time of the alleged events. According to the Kenosha County Jail website, the plaintiff was booked into the jail on August 9, 2019 and released on December 3, 2019, the same day he was convicted on a charge of violating his probation or parole. The Wisconsin Department of Corrections website confirms that on December 3, 2019, the plaintiff was transferred from the Kenosha County Jail to Dodge Correctional Institution. It appears that the plaintiff was a pretrial detainee in August 2019, when the alleged events occurred.

Because the plaintiff was a pretrial detainee at the time of the alleged events, his claims arise under the Fourteenth Amendment. See Hardeman v. Curran, 933 F.3d 816, 821–22 (7th Cir. 2019) (citing Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015)). Under the Fourteenth Amendment, a pretrial detainee may not be punished for the crime with which he is charged, though he may be "subject to certain restrictions on his liberty." Rapier v. Harris, 172 F.3d 999, 1002 (7th Cir. 1999) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). To state a claim under the Fourteenth Amendment, the plaintiff must show that the conditions of his confinement were objectively unreasonable; that is, he must show that the conditions were not "'rationally related to a legitimate non-punitive governmental purpose'" or that they were "'excessive in relation to that purpose.'" Hardeman, 933 F.3d at 822 (citing Kingsley, 135

7

S. Ct. at 2473). The court must "focus on the totality of facts and circumstances" that the defendants faced and "gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." Williams v. Ortiz, 937 F.3d 936, 942 (7th Cir. 2019).

The plaintiff alleges that the five correctional officers punished him by placing him in segregation and in a restricted chair overnight because he commented on some officers' sexual relationship and refused to tell others who flooded his cell. One officer told the plaintiff that she believed he might be tempted to commit suicide, but the plaintiff insists he never told the officer that. The plaintiff's allegations suggest that the officers did not have a legitimate, punitive purpose for placing him in segregation or in the chair overnight. Moreover, the plaintiff alleges that the officers did not allow him water or use of the bathroom while he was in the chair. Although it is possible that in certain circumstances there could be a legitimate reason to temporarily deny an inmate basic needs like water or use of a bathroom, the plaintiff does not allege that any legitimate reason existed here. Accepting the plaintiff's allegations as true, the plaintiff states a claim that he was impermissibly punished without a legitimate reason in violation of the Fourteenth Amendment.

The court can't tell whether the plaintiff also wants to proceed on a claim about his flooded cell. If so, he has not stated a claim. Although it may have been unpleasant to sleep in a flooded cell, the plaintiff does not allege that he suffered any injury from the conditions, such as slipping and falling on the

8

floor, illness from the water or damage to his personal property. Without allegations of injury, the plaintiff has not stated a Fourteenth Amendment claim based on the flooding in his cell. See Smith v. Dart, 803 F.3d 304, 312–13 (7th Cir. 2015) (affirming rejection of pretrial detainee's claims about pests in jail because detainee failed to allege whether he "suffered physical or psychological harm, or that his property has been damaged"); 42 U.S.C. §1997e(e) (barring suits under the PLRA "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act").

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **GRANTS** the plaintiff's motion to waive the initial partial filing fee. Dkt. No. 10.

The court **ORDERS** that Kenosha County Jail and Kenosha County Pretrial Facility are **DISMISSED** as defendants in this case.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on Kenosha County Jail correctional officers Megan, Martini, Gloria, Potter and Mike under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees.

9

The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** that defendants Megan, Martini, Gloria, Potter and Mike must file a responsive pleading to the complaint.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the $350 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

As the court has noted, the Wisconsin Department of Corrections inmate locator indicates that the plaintiff is now housed at Racine Correctional

Institution. The court will **DIRECT** the clerk's office to update the plaintiff's address on the docket, but it reminds the plaintiff that it is his responsibility to notify the court when his address changes.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 28th day of September, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER
Chief United States District Judge**

11

Case 2:20-cv-00018-PP-NJ   Filed 09/28/20   Page 11 of 11   Document 11